Johnny PRINCE, Appellant,

v.

STATE of Texas, Appellee.

No. 04–83–00095–CR.

Court of Appeals of Texas, San Antonio.

Aug. 29, 1984.

Terri Peace, San Antonio, for appellant.

Samuel D. Milsap, Jr., Ben Steinhauser, Edward F. Shaughnessy, III, Asst. Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., CANTU and TIJERINA, JJ.

## OPINION

CANTU, Justice.

Johnny Prince appeals from a conviction for attempted capital murder. His guilt was established by a jury but his punishment set at fifteen years' confinement was assessed by the trial court.

By his first ground of error, appellant alleges that the trial judge erred in refusing to disqualify himself by reason of being a named defendant in a suit for damages, filed in Federal Court by appellant.

The disqualification of a judge in Texas is governed by TEX. CONST. art. V, § 11 and TEX.CODE CRIM.PROC.ANN. art. 30.01 (Vernon 1966).

TEX. CONST. art. V, § 11 provides, in pertinent part:

> No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case.

TEX.CODE CRIM.PROC.ANN. art. 30.-01 (Vernon 1966) provides:

> No judge or justice of the peace shall sit in any case where he may be the party injured, or where he has been of counsel for the State or the accused, or where the accused or the party injured may be connected with him by consanguinity or affinity within the third degree.

The precise contention advanced by appellant has previously been rejected by our Court of Criminal Appeals in *Chamberlain v. State*, 453 S.W.2d 490 (Tex.Crim.App. 1970). In *Chamberlain* claimed error was predicated upon a trial judge's refusal to disqualify himself on the grounds that appellant had filed a civil suit against him and one of the prosecutors.

█ The term "interested in the case" was held to mean a direct interest in the case or matter to be adjudicated so that the result must, necessarily, affect his personal or pecuniary loss or gain. *Id.* at 492. The Court further stated:

> Here appellant has not shown any bias or prejudice on the part of the trial judge nor has he alleged any facts that would show any pecuniary interest of the judge on the outcome of the present case. If the mere filing of a civil action against the judge presiding at a criminal case would disqualify him, then any judge would be subject to disqualification at the whim of a defendant. Such practice, if allowed, could delay or prevent the trial of a case.

*Id.*

█ As in *Chamberlain*, appellant has not met his burden of demonstrating that the trial judge had a pecuniary interest in the outcome of the case. Appellant's ground of error one is overruled.

Appellant next contends that the trial court committed reversible error in denying his motion for an instructed verdict of acquittal.

█ The record reflects that appellant did not rest at the time the State rested but instead elected to present his defensive testimony. By placing before the jury defensive evidence, appellant has rendered it unnecessary for us to consider the propriety of the trial court's ruling denying his motion for instructed verdict. As in *Seals v.*

*State,* 634 S.W.2d 899, 909 (Tex.App.—San Antonio 1982, no pet.), appellant has by deliberate choice waived any review of the trial court's action on that motion. *See also Kuykendall v. State,* 609 S.W.2d 791, 794 (Tex.Crim.App.1980) and *Shirley v. State,* 501 S.W.2d 635, 637 (Tex.Crim.App. 1973).

In presenting his contention, appellant would have us limit our review of the evidence to only that presented by the State at the time it rested its case. Indeed, appellant's third ground of error acknowledges the existence of the element alleged to be missing at the time the State rested its case but seeks to exclude its consideration because it was elicited on rebuttal and because this evidence was allegedly erroneously admitted into evidence.

■ We decline to limit our review of the evidence to only that presented by the State at the time it rested its case. *See Orr v. State,* 124 Tex.Cr.R. 252, 61 S.W.2d 490, 493 (1933) (on rehearing).

_[5] A sufficiency of the evidence challenge requires this court to consider all the evidence brought forth at trial including the evidence offered by the defendant. *Angle v. State,* 486 S.W.2d 308, 309 (Tex. Crim.App.1972); *Williams v. State,* 466 S.W.2d 313, 314 (Tex.Crim.App.1971).

■ Thus, it is possible that any shortcomings the State's case may possess at the time the State rests its case may be cured through evidence finding its origin in the defendant's theory of the case or in rebuttal of that theory. *Orr v. State, supra,* 61 S.W.2d at 493.

In the instant case appellant's sole complaint appears to be that at the time the State rested its case and his motion for instructed verdict of acquittal was presented to the trial court, the State had failed to make a *prima facie* showing that appellant knowingly and intentionally attempted to cause the death of a peace officer by shooting *at him.*[1]

On rebuttal, the State successfully had admitted into evidence its exhibit number 28, a hospital record. The admission of this exhibit forms the basis of appellant's third ground of error.

State's exhibit number 28, a Baptist Memorial Hospital System physician's report on the patient's history and physical prepared by Pat Wilson, M.D., reads in its entirety:

### BAPTIST MEMORIAL HOSPITAL SYSTEM

PATIENT: MCKINNON, Beatrice PHYSICIAN(S): Dr. Pat Wilson ADMISSION NO: 82–06415–6

History of gun shot wound to the right hand-index finger and ring finger joint, DIP of the index finger and NP of the ring finger. Gun shot wound at the right temporal and also the right parietal region and parietal-frontal region. She is conscious. Denies any other problems. She is allergic to no medications. Has had a tetanus shot here in the Emergency Room. She states she had a history of nervous condition. She has been under the care of a psychiatrist. Her boyfriend allegedly shot her. She states she doesn't know what happen [sic] really. PAST HISTORY: No previous injuries, but she has worked at the Santa Rosa as a Unit Clerk. Allergic to no medication. Denies hypertension, cardiovascular or kidney disease, TB, arthritis or bleeding dyscrasias. REVIEW OF SYSTEMS: Denies any head, eye, ear, nose or throat difficult [sic] except for headaches occasionally and nervousness. Denies any chest pain, abdominal pain, pelvic pain, back pain, upper or lower limb pains.

1. The indictment in pertinent part reads:
   ... on or about the 9TH day of MARCH, A.D., 1982, JOHNNY PRINCE, hereinafter called defendant, did then and there intentionally and knowingly attempt to cause the death of EDWARD QUIRK, hereinafter called complainant, by SHOOTING AT THE SAID COMPLAINANT WITH A GUN, ... and the said defendant knew the complainant was a peace officer. ...

PHYSICAL EXAMINATION: This is a well developed Black female of 26 years of age. HEENT: Normal except for swelling of the temporal region on the right side and has a gun shot wound to the right temporal region just at the right side and over the parietal region. The right index finger has a wound *beginning* just distal to the PIP and coming out dorsally on the DIP on the radial side and one on the palm of the hand at the NP and exit appears to be *dorsally.* She states these wounds occurred while she was trying to grab the gun and keep her boyfriend from shotting [sic] her or the *policeman.*

X-rays were reviewed and it showed a fracture, nondisplaced of the ring finger metacarpal at the joint with metallic foreign body around this joint. Also there is only fine dusting area over the index finger and very faint powder or metallic markings over the skull area, but there is no shot through. She is conscious, alert and appears to be stable.

PLAN: Admit her, Betadine dressings, elevation of the hand, bedrest with the head elevated to 30 degrees, demarcation of the wounds and possibly debridement in the future.

PW/rs
03/09/82
03/12/82

/S/ _____
PAT WILSON, M.D.

The exhibit contains damning evidence concerning appellant's intent to shoot at the policeman.

Appellant's third ground of error reads: "The trial court erred in admitting State's Exhibit No. 28 into the evidence and this error was harmful."

The argument offered in support primarily addresses an alleged failure by the State to lay the proper predicate for the admission of a hospital record. *See* TEX.REV. CIV.STAT.ANN. art. 3737e (Vernon Supp. 1984). Argument is incidentally made that the instrument contains hearsay and deprives appellant of the right to cross examine the person making the entry and that the court should have excised portions of the report before allowing it to go to the jury. At the trial appellant limited his objection to the hearsay content of the instrument.

The State's admitted purpose for offering the instrument was as impeachment evidence as a prior inconsistent statement.[2]

The record clearly demonstrates that proper predicate for the offering of a prior inconsistent statement was established. *Cf. Moore v. State,* 652 S.W.2d 411, 413 (Tex.Crim.App.1983); *Haynes v. State,* 627 S.W.2d 710, 713 (Tex.Crim.App.1982). The predicate for offering a hospital record is not as clearly demonstrated. *See Fields v. State,* 402 S.W.2d 740, 741–42 (Tex.Crim. App.1966) (on rehearing).

However, as pointed out above, no objection regarding the predicate was made known to the trial court.

█ If the exhibit was admissible as a hospital record, the fact that it contains hearsay is acknowledged and its admissibility is established as an exception to the rule. *See Granviel v. State,* 552 S.W.2d 107, 122 (Tex.Crim.App.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977); *Diaz v. State,* 473 S.W.2d 492, 493 (Tex.Crim.App.1971).

█ The statute, however, permits introduction of qualified records only *insofar as relevant. Prine v. State,* 509 S.W.2d 617, 619–20 (Tex.Crim.App.1974). But no objection on the basis of relevancy has ever been made by appellant. In the absence of a proper objection to portions deemed irrelevant the entire exhibit becomes admissible. *See State v. Foster,* 501 S.W.2d 33, 36 (Mo.1973); 56 TEX.JUR.2d *Trial,* § 165 (1964).

Although we agree that portions of the exhibit were subject to being expunged

---

**2.** Testimony that is hearsay is inadmissible even for the purpose of impeaching a witness. *Lewis v. State,* 108 Tex.Cr.R. 258, 1 S.W.2d 298, 300 (1927) (on rehearing). This holding does not, however, extend to exceptions to the hearsay rule.

upon a proper and timely objection, we cannot conclude that the admission of the entire exhibit calls for error requiring reversal.

During the defensive side of the case, the witness Beatrice Marie McKinnon, appellant's common law wife was asked on cross examination whether or not she had related the same story to Dr. Pat Wilson that appellant now complains about on appeal. The matter was inquired into by the State without objection by appellant. The witness stated that she could not recall giving a statement to Dr. Wilson.

■ Before a witness may be impeached with evidence of a prior inconsistent statement, the witness must be asked if he/she made the contradictory statement. *Moore v. State*, 652 S.W.2d 411, 413 (Tex.Crim. App.1983). If the witness acknowledges the statement, the statement is rendered inadmissible. *Huff v. State*, 576 S.W.2d 645, 647 (Tex.Crim.App.1979). However, if the witness either denies or is unable to recall making the statement, the foundation for admission of the prior inconsistent statement is established. *Hutson v. State*, 164 Tex.Crim. 24, 296 S.W.2d 245, 249 (1956).

The witness' response to the State's question rendered the exhibit admissible for impeachment purposes.

In addition, TEX.REV.CIV.STAT.ANN. art. 3737e (Vernon Supp.1984) renders certain business records competent evidence although the evidence would normally be hearsay and without probative force.

■ We hold that State's exhibit 28 was admissible as a prior inconsistent statement for impeachment purposes and as competent evidence under the Uniform Business Records as Evidence Act, article 3737e.

■ When *all* the evidence in the case is examined in the light most favorable to the jury's verdict, *see Chase v. State*, 573 S.W.2d 247 (Tex.Crim.App.1978), we are satisfied that there is evidence from which a rational trier of fact could have found proof beyond a reasonable doubt, independent of the evidence contained in State's

exhibit 28, that appellant knowingly and intentionally attempted to cause the death of a peace officer by shooting at him.

During the State's case in chief, the complaining witness, Edward Quirk, testified that on March 9, 1982 he was a uniformed police officer assigned to the patrol division of the San Antonio Police Department. On this date officer Quirk responded to a dispatcher's report of a shooting at 849 Gulf Street in San Antonio. Upon arriving at the Gulf Street address Quirk entered the residence and observed a substantial amount of blood in one of the bedrooms. He then proceeded from the bedroom towards the den where he observed two individuals struggling in a corner of the room. The sudden movement of an arm and the presence of a gun reaching around one of the figures alerted Quirk to a possible danger arising, and he responded by diving towards a couch. At the very time Quirk dove towards the couch two shots rang out. Moments later Quirk observed appellant holding a gun to the head of his common law wife. Through negotiations with police officers appellant surrendered his person and his gun.

Both appellant and his common law wife testified that they were aware that police officers had been called to the residence following the double discharge of appellant's gun and the wounding of his common law wife in what appellant described as an accidental shooting. Appellant admitted that he was afraid of the police officers summoned because he felt that he would not be able to explain a double shooting accident.

There is evidence that appellant waited armed for the police officers' arrival, that he became aware of a police officer's presence in the house sometime after the initial shooting and that his common law wife had spoken to the officer and had unsuccessfully attempted to persuade them to leave the premises. According to appellant the gun used to shoot at officer Quirk was at all times in his possession and he never sought to relinquish it until his surrender. Appel-

lant further acknowledged that he recognized Quirk to be a peace officer and that he told him to get back and to leave. There is evidence that appellant did not have the gun pointed at his common law wife's head at the time the officers arrived on the scene but that appellant moved the gun up to her head only after officer Quirk and another officer advanced towards him.

The jury as triers of fact rejected appellant's version of the shooting and we will not disturb their verdict in the face of evidence supporting that verdict, even if we were inclined to reach a contrary result. Appellant's grounds of error are overruled. The judgment of the trial court is affirmed.

TIJERINA, Justice, dissenting.

I respectfully dissent.

The controlling question in this case concerns the sufficiency of the evidence which we will review as unassigned error. TEX. PENAL CODE ANN. § 19.03 (Vernon 1974), provides in pertinent part, viz:

(a) A person commits an offense if he commits murder as defined under Section 19.02(a)(1) of this code and:

(1) The person murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or fireman; ...

The indictment, omitting the formal parts, charges as follows:

On or about the 9th day of March A.D. 1982, Johnny Prince, hereinafter called defendant, did then and there intentionally and knowingly attempt to cause the death of Edward Quirk, hereinafter called complainant, by shooting at the said complainant with a gun, an act amounting to more than mere preparation that tended but failed to effect the commission of the offense of capital murder, having at the time the specific intent to commit the offense of capital murder, and the said complainant was a peace officer acting in the lawful discharge of an official duty, and the said defendant knew the complainant was a peace officer.

The court's charge defined criminal attempt as follows:

A person commits the offense of criminal attempt, if acting with the specific intent to commit some offense, he does an act amounting to more than mere preparation toward the conclusion of such offense that tends but fails to effect the commission of the offense intended.

Thus, the State's burden was to prove beyond a reasonable doubt the appellant's specific intent to commit the offense of attempted capital murder, an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended. *See Morrison v. State*, 625 S.W.2d 729, 730 (Tex.Crim.App. 1981). It has been held that a specific intent to kill is not an essential element of proof of murder and it is sufficient to show only an intent to cause serious bodily injury and that an act was committed amounting to more than mere preparation that could cause death of an individual but failed to do so. *Garcia v. State*, 541 S.W.2d 428, 430 (Tex.Crim.App.1976).

In *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court pronounced the standard of review on a sufficiency of the evidence question based on the due process clause of the Fourteenth Amendment and therefore binding on the State, stating:

After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt. [Citations omitted.] [Emphasis in original.] 443 U.S. at 318–19, 99 S.Ct. at 2788–89.

In *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the court ruled that proof beyond a reasonable doubt was an essential element of the due process clause of the Fourteenth Amendment. "... when such a conviction [that was obtained even when no rational trier of fact could have found guilt beyond a reasonable doubt] occurs in a state trial, it cannot constitutionally stand." *Jackson v. Virginia*, 443 U.S. at 317–18, 99 S.Ct. at 2788. *See also Griffin v. State*, 614 S.W.2d 155, 158–59 (Tex.Crim.App.1981).

In the instant case we are unable to apply the standard of viewing the evidence in the light most favorable to the prosecution because there is simply no evidence to establish the essential elements of the offense as charged in the indictment and the court's charge. There is no proof of the following essential elements: (1) that appellant shot at the complainant with a gun; (2) an act amounting to more than mere preparation that tended but failed to effect the commission of the offense of capital murder; (3) that appellant had the specific intent to commit the offense of capital murder; and (4) that appellant knew or from the position of the struggling parties should have known that the complainant was a police officer. Therefore the State has failed to prove beyond a reasonable doubt that appellant intentionally and knowingly attempted to cause the death of police officer Edward Quirk. The complainant testified he saw two people struggling on the floor and upon seeing arm movement he dove into a couch in the den. He did not see a gun pointed at him, he was not threatened and he stated he did not know who fired the shots. He could not say who was holding the gun prior to the shots being fired. Detective Ritchey testified he recovered one bullet from the kitchen ceiling and the other bullet from an *opposite* end of the den room. This testimony is not consistent with the State's theory that appellant was shooting at the officer. Lastly, appellant and his girlfriend (Beatrice McKinnon) both testified they were struggling for possession of the gun when it accidently discharged. We are not persuaded by the girlfriend's prior statement wherein she stated that: "... these wounds occurred while she (Beatrice) was trying to grab the gun and keep her boyfriend (appellant) from shooting her or the policeman." This statement standing alone does not establish the necessary proof that appellant knew he was shooting at a police officer. Therefore, considering the indictment and the court's charge, we conclude that there was insufficient evidence from which a rational trier of fact could have found proof beyond a reasonable doubt that appellant committed the offense of attempted capital murder.

In my view the judgment should be reversed and appellant ordered discharged. *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).